United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Mediaset Espana Comunicacion, S.A., Appellant, <br><br> v. <br><br> Omar Romay, Appellee. | ) ) ) ) ) ) ) ) ) Bankruptcy Appeal Case No. 22-21229-Civ-Scola |

### Order

This matter is before the Court on the Appellant Mediaset's motion for leave to file an interlocutory appeal pursuant to 28 U.S.C. § 158(a)(3). (ECF No. 1.) The Appellee Omar Romay filed a response in opposition (ECF No. 6), and Mediaset filed a reply brief in support of its motion (ECF No. 7). After careful consideration of the briefs, the record, and the relevant legal authorities, the Court **denies** the motion. (**ECF No. 1**.)

1. **Background**

Omar Romay argues that Mediaset, a Spanish media corporation, is in possession of a fraudulent transfer of $10 million. Romay, as liquidating trustee for the debtor America-CV Station Group Inc. ("ACVSG"), initiated an adversary proceeding, captioned *Omar Romay v. Mediaset Espana Comunicacion, S.A.*, Adv. No. 21-1059-BKC-AJC-A (Bankr. S.D. Fla.), to avoid and recover the $10 million transfer pursuant to 11 U.S.C. §§ 548 and 550.

While some facts are in dispute, the parties appear to agree that in April 2018, Mediaset received $10 million from ACVSG. This payment was related to Mediaset's sale of certain stock in Pegaso Television, Inc., a U.S. corporation, to Grupo Colte S.A., a Mexican company. Both Mediaset and Grupo Colte held, at some time, some ownership in ACVSG through their holdings in other corporations.

On May 14, 2019, ACVSG, after auctioning off several of its assets, filed a voluntary petition for bankruptcy under Chapter 11. In January 2020, Romay and ACVSG reached a settlement, where the parties agreed that upon confirmation of ACVSG's Chapter 11 plan, ACVSG would transfer to a liquidating trust, of which Romay was the liquidating trustee, all claims and causes of action related to ACVSG's transfer to Mediaset. Romay now argues that the $10 million was a fraudulent transfer out of the debtor.

In the Bankruptcy Court, Mediaset moved to dismiss the adversary proceeding, arguing that Mediaset, as a Spanish company, had no minimum

contacts sufficient to establish, and did not otherwise consent to, personal jurisdiction in Florida. On April 5, 2022, the Bankruptcy Court, in a two-page and unexplained order, denied Mediaset's motion. (ECF No. 1 at 21–22.)

Mediaset now moves for leave to appeal the Bankruptcy Court's denial of its motion to dismiss. In particular, Mediaset seeks to certify the following question for appeal:

> Whether the Bankruptcy Court erred in denying Mediaset's motion to dismiss, including whether the Bankruptcy Court erred in apparently concluding that it has general or specific jurisdiction over Mediaset or that Mediaset consented to or waived objections to jurisdiction in this fraudulent transfer action through contractual forum selection clauses or by filing the Colte Litigation in Miami-Dade County."

(ECF No. 1 at 6.)

## 2. Legal Standard

Under 28 U.S.C. § 158(a)(3), district courts have jurisdiction to hear bankruptcy appeals, "with leave of the court, from other interlocutory orders and decrees." 28 U.S.C. § 158(a)(3). The decision of whether to grant leave to appeal is within the discretion of the district court. *See In re Charter Co.*, 778 F.2d 617, 620 n.5 (11th Cir. 1985). But that discretion must be used sparingly—interlocutory bankruptcy appeals "should be the exception, not the rule" and are reserved for "exceptional circumstances." *See In re Lorenzo*, No. 13-23688, 2014 WL 273130, at *2 (S.D. Fla. Jan. 24, 2014) (Marra, J.). And while § 158(a)(3) does not identify any criteria to guide a court's exercise of its discretion, courts look to 28 U.S.C. § 1292(b), which governs grants of interlocutory appeals from the district courts to the courts of appeals.[1] *See In re Charter*, 778 F.2d at 620 n.5; *see also CCP SP Hotel, LLC v. Heritage Hotel Assoc., LLC*, No. 8:20-cv-2085, 2021 WL 229532, at *3 (M.D. Fla. Jan. 22, 2021) (noting that "[i]n the absence of textual guidance, district courts have uniformly looked to the standards in 28 U.S.C. § 1292(b)").

Under § 1292(b), courts have "circumscribed authority to certify for immediate appeal interlocutory orders deemed pivotal and debatable." *See Swint v. Chambers Cnty Comm'n*, 514 U.S. 35, 46 (1995). In relevant part,

---

[1] Mediaset argues that the Court need not apply the § 1292(b) factors, but rather the Court may certify an interlocutory appeal if the bankruptcy court's decision is "clearly reversible." (ECF No. 1 at 8 (citing *In re Marvel Entm't Grp., Inc.*, 209 B.R. 832, 837–38 (D. Del. 1997); *Reynolds v. U.S. I.R.S.*, No. 13-10788, 2014 WL 201610, at *2 (D. Mass. Jan. 15, 2014)).) However, the Eleventh Circuit has endorsed the application of § 1292(b) to motions filed under § 158(a)(3), and therefore the Court will follow circuit precedent and apply the factors set out in § 1292(b). *See In re Charter*, 778 F.2d at 620 n.5.

§ 1292(b) provides that certification is appropriate where the district judge is "of the opinion that [an interlocutory] order [1] involves a controlling question of law as to which [2] there is substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation[.]" *See* 28 U.S.C. § 1292(b); *see also Simpson v. Carolina Builders Corp.*, 222 F. App'x 924, 925 (11th Cir. 2007).

First, an interlocutory order involves a "controlling question of law" when it concerns "the meaning of a statutory or constitutional provision, regulation, or common law doctrine" or "an abstract legal issue" that the reviewing court "can decide quickly and cleanly without having to study the record.'" *See McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1258 (11th Cir. 2004) (quoting *Ahrenholz v. Brd. of Trs. of the Univ. of Ill.*, 219 F.3d 674, 676–77 (7th Cir. 2000)). Second, there is "substantial ground for difference of opinion" when the movant identifies other courts that are not "in 'complete and unequivocal' agreement" as to the resolution of the controlling legal question. *See McFarlin*, 381 F.3d at 1258 (quoting *Burrell v. Brd. of Trs. of Ga. Mil. Coll.*, 970 F.2d 785, 788–89 (11th Cir. 1992)). Last, an interlocutory appeal will "materially advance" the case when "resolution of a controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation." *See McFarlin*, 381 F.3d at 1259.

### 3. Analysis

The Court holds that an interlocutory appeal is improper here, as Mediaset does not raise a "controlling question of law" under § 1292(b) and § 158(a)(3). As stated above, a "controlling question of law" is one involving an "abstract legal issue"—a question of "pure law"—the resolution of which does not require "rooting through the record." *See McFarlin*, 381 F.3d at 1258.

Unlike a controlling question of law, "the existence of personal jurisdiction is a 'fact-intensive analysis.'" *See In re Zantac (Ranitidine) Prods. Liab. Litig.*, MDL No. 2924, 2020 WL 6907056, at *1 (S.D. Fla. Nov. 24, 2020) (Reinhart, Mag. J.) (quoting *In re Takata Prods. Liab. Litig.*, 396 F. Supp. 3d 1101, 1157 (S.D. Fla. 2019) (Moreno, J.)). Courts routinely deny interlocutory appeal for denials of motions to dismiss for lack of personal jurisdiction, as such appeals would necessarily involve a fact-intensive inquiry. *See Knepfle v. J-Tech Corp.*, No. 8:18-cv-543, 2020 WL 1974225, at *1 (M.D. Fla. Apr. 24, 2020) ("Reviewing this question [of whether there were sufficient minimum contacts] would require the Eleventh Circuit to engage in a 'highly intensive evaluation of the facts.'") (internal citations omitted); *PFM Air, Inc. v. Dr. Ing. HC. F. Porsche A.G.*, 751 F. Supp. 2d 1264, 1269 (M.D. Fla. 2010) (holding that "there is no question of law" as the question of personal jurisdiction requires "a

highly intensive evaluation of the facts"); *In re U.S. Oil and Gas Litig.*, No. 83-1702, 1988 WL 28544, at *30 (S.D. Fla. Feb. 8, 1988) ("The consequences of a fact-specific personal jurisdiction decision cannot be characterized as far-reaching enough . . . to warrant § 1292(b) certification.") (Hoeveler, J.).

To be sure, as Mediaset argues, courts have certified cases involving questions of personal jurisdiction, but only where the question is a "purely legal one" that can be "appropriately cabined" from any disputed facts. *See Gilmore v. Jones*, No. 3:18-cv-00017, 2019 WL 4417490, at *4 (W.D. Va. Sept. 16, 2019) (holding that while "analyzing personal jurisdiction is often a fact-intensive inquiry," certification may be warranted where "the issue for certification . . . can be appropriately cabined as a purely legal one"); *Hunter v. Chrysler Canada, Inc.*, No. 6:09-cv-1050, 2010 WL 11507702, at *2 (M.D. Fla. Aug. 4, 2010) (noting that "[t]he Eleventh Circuit has entertained interlocutory appeals regarding the existence of personal jurisdiction over a defendant as a controlling question of law as to which there is substantial ground for difference of opinion . . . under the [undisputed] facts of [the] case").

Here, personal jurisdiction cannot be cabined to a pure legal issue, despite Mediaset's attempts to frame it in such a manner. Mediaset argues that there are four discrete questions of law at issue:

- "Whether the mere receipt, outside the forum, of an alleged fraudulent transfer originated from within the forum is sufficient to establish specific jurisdiction over a non-resident."
- "Whether other litigation in the forum *ipso facto* constitutes consent to or waiver of objections to personal jurisdiction."
- "Whether contractual forum selection clauses constitute blanket waivers of objections to personal jurisdiction, can be enforced by someone who is not a party or third-party beneficiary to the contract, or can be enforced in a fraudulent transfer action."
- "Whether general jurisdiction can be asserted over a foreign defendant when the complaint does not allege, and it is undisputed that the defendant does not have, affiliations with the forum that are so 'continuous and systematic' that it is 'essentially at home' in the forum."

(*See* ECF No. 7.)

Mediaset largely focuses on the first question. However, as resolution of this issue requires review of the record and determination of factual disputes, the Court holds that interlocutory appeal is not warranted. Indeed, case law that Mediaset cites in its favor holds that receipt of a fraudulent transfer outside the forum can establish personal jurisdiction if the defendant "actively

participated" in the transfer. (*See* ECF No. 1 at 13 (discussing *Reynolds v. Behrman Cap. IV, L.P.*, No. 2:18-cv-00514, 2019 WL 527364 (N.D. Ala. Feb. 11, 2019) (granting a motion to dismiss, as the plaintiff did not allege sufficient facts "showing that [the defendant] was involved enough in the alleged scheme to have minimum contacts"), *reversed on other grounds* 988 F.3d 1314 (11th Cir. 2021)).) Determining whether Mediaset had sufficient involvement in the alleged fraudulent transfer would require significant review of the factual record. For this reason, interlocutory appeal is not warranted.[2]

The Court notes that the question of how to determine personal jurisdiction in a case involving a foreign fraudulent transfer appears to be an unsettled question of law. The court in *Reynolds*, as well as the cases discussed in *Reynolds*, did not address *Walden v. Fiore*, 571 U.S. 277 (2014) and its clarification of the "effects test"[3] previously set out in *Calder v. Jones*, 465 U.S. 783 (1984). When it comes to foreign fraudulent transfers, there may be tension between exercising personal jurisdiction over foreign defendants and the purposes of 11 U.S.C. § 550. Section 550(a) permits a trustee to recover fraudulently conveyed property for the benefit of the estate, and this authority would be frustrated if a fraudster could render the property "recovery-proof" by merely transferring it overseas. *See In re Picard*, 917 F.3d 85, 100 (2d Cir. 2019) (noting that the Bankruptcy Code should not be read in such a "self-defeating way"); *cf. In re French*, 320 B.R. 78, 85 (D. Md. 2004) (finding that failure to apply section 548 "extraterritorially would provide the potential to deprive creditors of significant assets merely on the happenstance that they had been cached overseas").

However, it is not for the Court to resolve this tension.[4] As the Court held above, the determination of whether personal jurisdiction exists here involves

---

[2] The Court will not address the other discrete personal-jurisdiction issues that Mediaset identified above. As personal jurisdiction could be founded on any of the above, the Court holds that any determination of personal jurisdiction here involves a factual question that is inappropriate for interlocutory appeal.

[3] The "effects test" looks to the intentions and effects of a defendant's conduct and provides that personal jurisdiction over an out-of-state intentional tortfeasor may be appropriate based on "intentional conduct by the defendant that creates the necessary contacts with the forum." *See Walden*, 571 U.S. at 286–88.

[4] The Court notes that courts have held that to recover a fraudulent transfer, courts "may exercise *in rem* jurisdiction [over the property] without subjecting a party to *in personam* jurisdiction." *See In re Palumbo*, 353 B.R. 37, 42 (Bankr. D. Mass. 2006) (noting that this is "not a novel" proposition); *cf. Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 372 & n.10 (2006) (noting, and refusing to resolve, that "[a] court order mandating turnover of the property [pursuant to § 550(a)], although ancillary to and in furtherance of the court's *in rem* jurisdiction, might itself involve *in personam* process"). Indeed, "[b]ankruptcy jurisdiction, at its core, is *in rem*." *Katz*, 546 U.S. at 362. And courts have exclusive jurisdiction over "all of the

the application of multiple facts to a question of law, and thus there is no "controlling question of law." *See McFarlin*, 381 F.3d at 1258 (holding that a "controlling question of law" does not involve the application of fact to law where doing so requires "rooting through the record").

### 4. Conclusion

For the reasons above, the Court **denies** the Appellant's motion for leave to file an interlocutory appeal (**ECF No. 1**), as the question of whether personal jurisdiction is met is a question of fact and not a "controlling question of law." *See Figueroa v. Wells Fargo Bank N.A.*, 382 B.R. 814, 824 (S.D. Fla. 2007) (Gold, J.) (holding that leave to appeal may be denied where the appellant fails to establish any one of the § 1292(b) factors). The Court **directs** the Clerk to **close** this case. Any pending motions are **denied as moot**.

**Done and ordered** at Miami, Florida, on May 23, 2022.

_____
Robert N. Scola, Jr.
United States District Judge

---

property, wherever located, of the debtor as of the commencement of such case, and of property of the estate," which includes property allegedly transferred in violation of section 548. *See* 28 U.S.C. § 1334(e)(1); *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204–05 & n.10 (1983). The exercise of *in rem* jurisdiction over fraudulently transferred property may avoid the concerns of *in personam* jurisdiction over foreign defendants. However, this question is not before the Court.